847 A.2d 738 (2004)
In re T.F.
Appeal of B.F.
In re A.W.F.
Appeal of B.F.
In re J.F.
Appeal of B.F.
In re E.F.
Appeal of B.F.
Superior Court of Pennsylvania.
Argued January 13, 2004.
Filed April 12, 2004.
*739 Nanina D. Takla, Philadelphia, for appellant.
William S. Braveman, Philadelphia, for Dept. of Human Services, participating party.
Before: BENDER, BECK and KELLY, JJ.
OPINION BY BENDER, J.:
¶ 1 B.F. (Mother) appeals from the orders granting the petitions filed by the City of Philadelphia Department of Human Services (DHS) seeking the involuntary termination of Mother's parental rights to four children, A.W.F., born July 31, 1991, E.F., born December 11, 1994, J.F., born July 20, 1996, and T.F., born December 27, 1997.[1] For the following reasons, we reverse.
¶ 2 Hearings on the termination petitions were held on January 21, 2003, and on February 3, 2003, at which time the court heard testimony from Olusola Fadina, a DHS social worker, from Peggy Howard, a Children's Services social worker for J.F. and A.W.F., from Miriam Hawkins, T.F.'s and E.F.'s foster mother, and from Mother on her own behalf. Based on the testimony it heard, the court set forth the following recitation of the facts:
At the termination hearing Olusola Fadina, a DHS social worker, testified that [Mother]'s four children came to the attention of the DHS in July 1998. DHS received reports that [Mother] had drug abuse problems and often left the children at home unsupervised. Fadina testified that a Family Service Plan ("FSP") was developed with the goal of improving [Mother]'s living conditions. According to the FSP, [Mother] was to abstain from leaving the children unattended, provide meals and clean clothes for her children and make her home a safer place to live. After [Mother] failed to comply with her FSP objectives, the children were removed from [Mother]'s custody on January 31, 2001. A second FSP was developed and agreed to by [Mother] on March 15, 2001. The goal of this FSP was to reunite [Mother] with her four children. To achieve this goal, [Mother] was to participate in a drug and alcohol abuse evaluation, comply with treatment recommendations, disclose her treatment progress to DHS, comply with all medical conditions, remain drug free, successfully complete eight (8) drug screens, protect the children from abuse, disclose progress reports and evaluations of the children to DHS, locate and occupy suitable housing and attend counseling to help her improve her relationship with her four (4) children. Fadina testified that [Mother] failed to comply with any of these objectives.
Peggy Howard, a Children's Services social worker for J.F. and A.[W.]F., testified that [Mother] never visited J.F. and A.[W.]F. from July 2001 to September 2002. [Mother] refused Howard's urging that she visit her children. Howard informed [Mother] of the consequences of not maintaining any contact with her children; namely that [Mother] would lose custody of her children. This *740 was not enough to make [Mother] visit her children. Howard testified that since the termination proceedings were initiated, [Mother] has visited J.F. and A.[W.]F. on only two occasions. The first visit was scheduled from 5:00 to 6:00 p.m. [Mother] arrived forty-five (45) minutes late.
[Mother] testified at the February 3rd termination hearing. [Mother] stated that she did not want her parental rights terminated because she loves her children. [Mother] stated that she did fix her home as mandated by the FSP. However, she testified that she did not complete the drug programs because she either did not understand them, did not qualify for them or that she was scared of the programs.
Trial Court Opinion (T.C.O.), 6/30/03, at 2-3. The trial court further related that:
After [Mother] lost custody of her children, [Mother] rarely visited them. On one visit, T.F. was molested by [Mother]'s live-in paramour. From July 2001 through September 2002, a period of fourteen months, [Mother] did not once visit [A.W.F.] and J.F. [Mother] visited her children only twice since the initiation of the termination proceedings.
Miriam Hawkins, T.F.'s and E.F.'s foster parent, testified that E.F.'s and T.F.'s behavior regressed after [Mother]'s visits. After the children were placed with Hawkins, the children went to therapy to help stop sexual behavior. Both children regressed and engaged in sexual behavior after visits from [Mother]. Additionally, each child became unruly after being visited by [Mother].
[Mother] showed no parental interest in her children, rarely visiting them and never bringing gifts, cards or showing motherly attention to her children. [Mother] has made no effort to take advantage of the services being provided to her. [Mother] received Level II SCOH (Services to Children in Own Home) support even after her children were removed from her custody. Despite the support that [Mother] received, she failed to comply with any of the FSP objectives.
It is evident that the petition for involuntary termination of the parental rights of [Mother] was properly granted. [Mother] did not achieve any of the necessary objectives for reunification in the twenty months between her children's placement and the filing of the goal change petition. [Mother] only bothered to visit her children twice after the filing of the petition to terminate her parental rights. Her constant neglect of her children and her continued incapacity to parent caused her children to be without essential parental care and control. [Mother] showed no effort to remedy this behavior.
[Mother]'s children were removed from [Mother]'s care twenty months prior to the filing of the petition to terminate [Mother]'s parental rights. The testimony given at the hearings on January 21 and February 3, 2003, show that the conditions that led to the children's placement still exist. [Mother] is still battling a drug addiction. [Mother] testified on her own behalf on February 3, 2003. She stated that she now realizes that she loves her children and that she wants to be a part of their lives. She also testified that she is [sic] currently lives in a recovery home for drug addicts. However, she has not yet completed any drug program and remains addicted to drugs. [Mother] had twenty months to remedy her self-destructive behavior and become a good parent. In that time, [Mother] has not completed a drug program and has rarely visited her children. On the other hand, the children *741 are adjusting well to their foster homes and foster parents. The children refer to their foster parents as "mommy" and "daddy." Howard testified that the children do not want to return to the chaotic and stressful living situation that [Mother] provided them. Therefore, the weight and sufficiency of the evidence clearly supported involuntary termination of [Mother]'s parental rights.
T.C.O. at 7-8. Accordingly, with reliance on the above, the court ordered the involuntary termination of Mother's parental rights pursuant to four subsections of Section 2511(a) of the Adoption Act, 23 Pa. C.S. § 2511(a)(1), (2), (5) and (8).[2] This appeal followed.
¶ 3 On appeal, Mother raises four issues for our review:
1. Did the Department of Human Services of the City of Philadelphia (DHS) fail to prove by clear and convincing evidence that involuntary [sic] terminating [Mother's] parental rights would best serve the emotional needs and welfare of each of her four children?
2. Did the trial court commit an error of law by involuntarily terminating Mother's parental rights without fully considering the impact of termination on the emotional needs and welfare of the children?
3. Did the trial court commit an error of law by excluding evidence that *742 was relevant to the crucial question of whether the children's emotional needs and welfare would be served by involuntary termination of Mother's parental rights?
4. To the extent that this Court may find that Mother failed to preserve the issues presented here on appeal, was Mother's trial counsel ineffective?
Mother's brief at 3.
¶ 4 When considering appeals such as the one presently before us, we are guided by the following:
When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict.
In re: Involuntary Termination of C.W.S.M. and K.A.L.M., 839 A.2d 410, 414 (Pa.Super.2003). We are also aware that:
In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by "clear and convincing" evidence the existence of grounds for doing so. The standard of "clear and convincing" evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.
In re A.L.D., 797 A.2d 326, 336 (Pa.Super.2002) (quoting In re Adoption of Atencio, 539 Pa. 161, 650 A.2d 1064, 1066 (1994)). Moreover, an abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." Id.
¶ 5 With regard to her first three issues, Mother's arguments all concern the effect that the termination of her parental rights has on the emotional needs and welfare of the children, i.e., that DHS failed to prove the effect on the children by clear and convincing evidence, that the court failed to consider the effect on the children, and that relevant evidence of the effect on the children was excluded.[3] We agree.
¶ 6 As in the instant case wherein the court indicated that Mother's parental rights were terminated pursuant to subsection (1), (2), (5) and (8), the trial court in C.W.S.M. terminated the father's parental rights pursuant to the same four subsections of § 2511(a).[4] The C.W.S.M. court explained, using subsection (1) as an example, that once the factors set forth in the subsection were established, "the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) *743 consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." C.W.S.M., 839 A.2d at 415 (quoting Matter of Adoption of Charles E.D.M., II, 550 Pa. 595, 708 A.2d 88, 92 (1998)). Moreover, relying on In re Adoption of A.C.H., 803 A.2d 224 (Pa.Super.2002), the C.W.S.M. court also indicated that "the question of whether termination would best serve the needs and welfare of the child is not a mere formality flowing from the existence of the other required elements ..., but instead is a discrete consideration." Id.
¶ 7 Additionally, "where there is a lack of evidence as to the effect termination of parental rights will have on the child, there is not competent evidence to allow the trial court to make a proper determination under Section 2511(b)." Id. at ¶ 415. See also In re E.M., 533 Pa. 115, 620 A.2d 481, 485 (1993) (stating that "[t]o render a decision that termination serves the needs and welfare of the child without consideration of emotional bonds ... is not proper").
¶ 8 We note that the testimony provided by Ms. Hawkins, E.F.'s and T.F.'s foster mother, related solely to the children's reaction to Mother's visits with them subsequent to the filing of the petition. Ms. Hawkins' testimony contained no more information than the four sentences related by the trial court on page 7 of its decision and reproduced previously in this memorandum. See N.T., 1/21/03, at 19, 22, 24-25. Additionally, the court noted that Ms. Howard, the social worker for J.F. and A.[W.]F., testified that "[t]he children refer to their foster parents as `mommy' and `daddy,'" and that "the children do not want to return to the chaotic and stressful living situation that [Mother] provided them." T.C.O. at 8. However, again in the context of the visits with Mother, the court did not mention that Ms. Howard also indicated that the children wanted to see Mother, and that J.F. showed affection to Mother and was upset when the visit was over. N.T., 1/21/03, at 80-82, 85. We also note that the testimony presented did not separately address the effect that the termination would have on each child individually. Rather, in reviewing the testimony, it is difficult at times to know which child the witness was discussing or more aptly put, the witnesses appeared to lump the children together as a unit. These children are individuals and should be treated as such by the agency and by the court.
¶ 9 Based on the law as espoused in C.W.S.M., the cases cited therein and our review of the record in the instant case, we conclude the court's analysis with regard to the developmental, physical and emotional needs and welfare of the children is lacking. Acknowledging Ms. Howard's comments quoted in the previous paragraph, the court merely concluded that "the children are adjusting well to their foster homes and foster parents." T.C.O. at 8. We find nothing in the record that supports this conclusion. Also there is no discussion about bonding or a lack thereof between the children and Mother, or between the children themselves. Nothing was submitted into evidence about the children's health, their schooling and whether or not they are content in their surroundings. Therefore, we have no way of knowing what effect the termination of Mother's parental rights will have on the children. Nor can we conclude that the trial court's conclusion is based on any evidence in the record.
¶ 10 The cases we rely on in this opinion make clear that in addition to establishing the factors outlined in any one of the subsections of section 2511(a), the agency must establish by clear and convincing evidence that the termination will serve the *744 needs and welfare of the child. DHS has failed to do so here. Moreover, we conclude that the trial court did not consider the termination as it related to the children's welfare.
¶ 11 We note that a motion in limine filed by DHS was granted by the trial court, see N.T., 1/21/03, at 12-13, prohibiting testimony concerning actions taken by Mother following the receipt of notice of the filing of the petition to terminate her parental rights, i.e., after September 18, 2002. The motion was granted requiring compliance with the language of the last sentence set forth in 23 Pa.C.S. § 2511(b). Because of this prohibition, Mother was unable to present testimony about her in-patient treatment and other efforts she has made with regard to her drug problems since the filing of the termination petition.
¶ 12 To counter the prohibition of testimony about the strides she has made since the filing of the petition, Mother cites this court's decision in In re K.C.W., 456 Pa.Super. 1, 689 A.2d 294 (1997), for the proposition that a "court must examine the individual circumstances and any explanations offered by the parent to determine if, in light of the totality of the circumstances, the evidence clearly warrants the involuntary termination of parental rights." Id. at 299. See also Charles E.D.M., 708 A.2d at 91 (stating that a court must consider all explanations offered by parents in light of the totality of the circumstances). Mother then points out that this Court in K.C.W., in reversing the trial court's termination order, reviewed evidence of the mother's activities before, during and after the petition was filed, including the mother's situation at the time of the termination hearing.
¶ 13 Under the facts here, we do not conclude that the trial court erred in granting the motion in limine, prohibiting the submission of evidence on Mother's post petition effort. Rather, we note that the statutory language contained in 23 Pa. C.S. § 2511(b) prohibits the court's consideration of these efforts. Regardless, our review reveals that DHS has failed to carry its burden of proving that the termination of Mother's parental rights would best serve the needs and welfare of the children. We also conclude that the trial court abused its discretion in failing to consider in more than a cursory way what effect the termination would have on the needs and welfare of each child.
¶ 14 Finally, we are cognizant of the fact that in C.W.S.M., this Court reversed the order terminating the father's parental rights and remanded the matter for the taking of additional evidence with regard to the emotional bonds between the father and the children and the effect of the termination of the father's parental rights on the children. The C.W.S.M. opinion cites notes of testimony showing that evidence was presented indicating that some type of relationship existed between the father and the children and that the children expressed a desire to return home. Based on our review of the record here, we conclude that the similarities between C.W.S.M. and the case presently before us appear to dictate that we also reverse the order terminating Mother's parental rights and remand to allow for additional testimony. The C.W.S.M. court's recitation of the facts gleaned from the testimony clearly shows that, although not adequate, more evidence about the children was provided to the court to consider than what was presented into evidence in the instant case. Here, there was a dearth of evidence about the children, other than that cited above. We remind the parties that it is the agency's burden to prove by clear and convincing evidence that grounds exist to terminate parental rights, i.e., evidence of the *745 refusal or incapacity to parent the child[ren] and what best serves the needs and welfare of the child[ren].
¶ 15 Accordingly, we must reverse the court's order granting the termination petition and remand to allow the parties to provide additional evidence concerning the effects of the termination of Mother's parental rights on each child. As in C.W.S.M., we instruct the trial court to then "conduct an analysis regarding this issue as well as all other factors bearing upon the termination of [Mother's] parental rights." Id. at 417.[5]
¶ 16 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.
NOTES
[1] The parental rights of the fathers of these children were terminated and they are not parties to this appeal.
[2] In pertinent part, 23 Pa.C.S. § 2511 provides:

§ 2511. Grounds for involuntary termination
(a) General rule.The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
....
(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
....
(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
(b) Other considerations.The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.
[3] The attorney appointed by the trial court to represent the interests of the children indicates that he has joined in and adopted the brief filed by Mother.
[4] DHS acknowledges that it listed all four subsections in its petitions for termination, but asserts that it proceeded only under subsection 2511(a)(1), thus, prohibiting the consideration of any efforts by a parent after notice of the filing of the termination petition. See N.T. Hearing, 1/21/03, at 7-8.
[5] In light of the result we reach, we need not address the fourth issue raised by Mother.