J-S45030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: S.G.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.D., MOTHER | |
| | No. 778 EDA 2014 |

Appeal from the Decree Entered February 7, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at Nos.:   CP-51-AP-0000268-2013
CP-51-DP-0001852-2011

| IN THE INTEREST OF: V.A., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.D., MOTHER | |
| | No. 779 EDA 2014 |

Appeal from the Decree Entered February 7, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at Nos.: CP-51-AP-0000333-2012
CP-51-DP-0000653-2010

| IN THE INTEREST OF: G.A.R.D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: A.D., MOTHER | |
| | No. 780 EDA 2014 |

Appeal from the Decree Entered February 7, 2014

J-S45030-14

In the Court of Common Pleas of Philadelphia County
Family Court at Nos.:  CP-51-AP-0000332-2012
CP-51-DP-0000652-2010

BEFORE:  BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED AUGUST 26, 2014**

In these consolidated appeals,[1] A.D. ("Mother") appeals the February 7, 2014 decrees that terminated her parental rights to her daughters S.D. (born in April 2011), V.A. (born in September 2008), and G.D. (born in October 2007) ("Children").[2]  We affirm.

The record supports the following recitation of the facts of this case. G.D. and V.A. were living with Mother and M.H. ("Maternal Grandmother") when Philadelphia's Department of Human Services ("DHS") received a General Protective Services ("GPS") report on August 10, 2010, regarding G.D.  The report stated that Maternal Grandmother had admitted herself to Fairmount Behavioral Health the week prior, and that G.D., then five years old, was outside the home, unattended, at 2:30 a.m. on August 9, 2010. DHS investigated the report and discovered that Mother's whereabouts were unknown during the time that G.D. was alone.  DHS found that both Mother

_____

[*]    Former Justice specially assigned to the Superior Court.

[1]    This Court, *sua sponte*, consolidated these appeals on April 1, 2014.

[2]    The trial court also terminated the parental rights of the respective fathers of the Children.  The fathers did not file appeals.

- 2 -

and Maternal Grandmother were abusing drugs in the home, and that Maternal Grandmother was prostituting herself to finance her drug habit.

The GPS report prompted DHS to refer the family for In Home Protective Services. Notes of Testimony ("N.T."), 2/7/2014, at 9. In its September 23, 2010 application for a protective order, DHS caseworkers stated that, during a home visit, Maternal Grandmother was high on crack cocaine; that Mother, who was three months pregnant with S.D. at the time, admitted that she used prescription drugs and drank alcohol; that the home and the Children were dirty; that the house had no gas service and an illegal electric hook-up; and that the Children went to the neighbor's house when they were hungry because there was no food in the house. DHS obtained an Order of Protective Custody for V.A. and G.D., and placed them in foster care. At that time, Mother and Maternal Grandmother each asked DHS to place them in in-patient treatment. N.T. at 9.

The trial court adjudicated G.D. and V.A. dependent on October 1, 2010. Mother's Family Service Plan ("FSP") objectives were to obtain housing, visit with the Children, complete a parenting education course, engage in drug and alcohol treatment, and pursue a General Educational Development Certificate ("GED"). *Id.* at 10. When Mother began to exhibit signs of depression, DHS added the objective of stabilizing her mental health and complying with treatment recommendations, therapy, and medication. *Id.* at 15.

S.D. was born in April 2011. She spent the first five months of her life with Mother at a shelter called Pathways. Pathways, however, discharged Mother for selling drugs to other residents. *Id.* at 9. DHS attempted to implement In Home Protective Services to assist Mother, and referred her to outpatient treatment. Mother, however, missed two intake appointments at the treatment center. Trial Court Opinion ("T.C.O."), 4/17/2014, at 3. After a home visit at which Mother was disoriented, DHS obtained an order for protective custody for S.D. on September 22, 2011, and placed her in foster care. *Id.*

Mother was referred to the Clinical Evaluation Unit ("CEU") on multiple occasions. On January 18, 2011, Mother had been referred to the CEU for an evaluation but rescheduled the evaluation four times due to complications with her pregnancy. T.C.O. at 2. When Mother finally was evaluated on April 4, 2011, the CEU recommended that she attend an intensive outpatient program. DHS provided Mother with assistance in finding housing by referring her to Methodist Shelter Plus and the Achieving Reunification Center ("ARC"). N.T. at 10-11. Mother was discharged from the Methodist program for non-compliance with the drug and alcohol program.

Mother missed two intake appointments for outpatient programs. On September 28, 2011, she was admitted to Valley Forge Medical Center for severe depression, and was discharged three days later.

Mother came to the CEU voluntarily on October 3, 2011, and requested an appointment for an evaluation. The CEU made the

appointment but Mother did not appear on the scheduled date. T.C.O. at 3. Mother had provided an urine sample to the CEU on January 27, 2012, which tested positive for opiates, amphetamines, marijuana, and benzodiazepines. Mother provided a sample on April 20, 2012, which tested positive for opiates, marijuana and benzodiazepines. Mother, however, did not stay for an evaluation on that date. DHS social worker Elisa Graves testified that Mother has never completed a drug and alcohol program, despite being referred to several different programs. N.T. at 15. Ms. Graves also testified that Mother was referred to Behavioral Health Systems. *Id.* at 15-16. Mother, however, did not provide any documentation that she was attending any therapeutic programs. *Id.* at 16. Ms. Graves referred Mother to a parenting class, but Mother failed to complete the program. *Id.* at 11. She also failed to follow through with pursuing a GED. *Id.* at 12.

Mother attended inpatient treatment at Interim House, starting on September 16, 2013, and, while there, provided negative urine screens. N.T. at 22. Mother then transferred to a program at Liberte House, but was ejected from the program for fighting. *Id.* at 23. Mother relapsed after this. *Id.* At the time of the termination hearing, Mother was in another inpatient program. *Id.* at 25.

At an October 9, 2012 permanency review, the trial court found that Mother had signed voluntary relinquishments for V.A. and G.D. The trial court also directed that V.A. and G.D. were "permitted to move to Maine with Pre-Adoptive Resource to Maine [*sic*] by agreement of the parties."

Order, 10/9/2012, at 2. The court noted that paperwork had been submitted pursuant to the Interstate Compact for the Placement of Children. *Id.* V.A. and G.D. moved to Maine with their foster family in October 2012, and at that point, Mother's visits with V.A. and G.D. ceased. N.T. at 29-30.

Based upon the signed voluntary relinquishments for V.A. and G.D., the trial court scheduled a hearing on the voluntary relinquishments for November 19, 2012. However, Mother's parental rights were never terminated by voluntary relinquishment. Instead, the hearing was continued and never rescheduled.

DHS filed petitions to involuntarily terminate Mother's parental rights to the Children. The trial court held a hearing on those petitions on February 7, 2014, and terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8),[3] and (b). Mother filed her notices of appeal and statement of matters complained of on appeal on March 7, 2014.

Mother raises the following questions on appeal:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511(a) (1) where [M]other presented evidence that she tried to perform her parental duties[?] Additionally, [M]other was consistently denied visitation with two of her children for the last sixteen months.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa.

_____

[3]    For the termination of Mother's parental rights to S.D., the trial court also found that the grounds pursuant to section 2511(a)(9) had been met.

C.S.A. sections 2511(a) (2) where [M]other presented evidence that she has remedied her situation by taking parenting and receiving drug and alcohol and mental health treatment and has the present capacity to care for her children[?] Additionally, [M]other was consistently denied visitation with two of her children for the last sixteen months.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511(a) (5) where evidence was provided to establish that the [C]hildren were removed from the care of the [M]aternal [G]randmother and now [M]other is capable of caring for her children[?] Additionally, [M]other was consistently denied visitation with two of her children for the last sixteen months.

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511 (a) (8) where evidence was presented to show that [Mother] is now capable of caring for her children after she began receiving the drug and mental health treatment she needed[?]   Additionally, [M]other was consistently denied visitation with two of her children for the last sixteen months.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [Mother] pursuant to 23 Pa. C.S.A. sections 2511(b) where evidence was presented that established the children had a close bond with [Mother] and had lived with [Mother] for the first part of their lives[?] Additionally, mother was consistently denied visitation with two of her children for the last sixteen months.

Mother's Brief at 7.

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions.  However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

It is well-settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by clear and convincing evidence, which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further:

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

The trial court found grounds to terminate Mother's parental rights pursuant to § 2511(a)(1), (2), (5), (8), and (b). However, this Court only needs to agree with the trial court's conclusions with regard to one subsection of 23 Pa.C.S.A. § 2511(a), in addition to § 2511(b), in order to affirm the termination of parental rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Termination is a two-step process, in which the court first must determine if the grounds under subsection (a) are met, and then consider subsection (b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is upon the parent, while section 2511(b) focuses upon the child. *Id.* at 1008. Herein, we review the orders pursuant to § 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of § 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied.  **See In re Adoption of M.E.P.**, 825 A.2d 1266, 1272 (Pa. Super. 2003).  The grounds for termination of parental rights under § 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct.  Grounds pursuant to this section may include refusal, as well as incapacity, to perform parental duties.  **In re A.L.D.** 797 A.2d 326, 337 (Pa. Super. 2002).

In support of her claim that that the trial court erred in terminating her parental rights pursuant to subsection 2511 (a)(2), Mother claims that she "has substantially completed her FSP goals of parenting classes, drug and

alcohol treatment, mental health treatment and visitation." Mother's Brief at 16. Mother testified that she had met or was making progress toward her FSP goals. N.T. at 47-49.

While the trial court initially found that Mother had made progress toward her goals in October 2011, the trial court concluded that Mother made minimal or no progress at all subsequent permanency reviews. T.C.O. at 5. Mother's testimony regarding her FSP goals was contradicted by the other witnesses, and Mother offered no documentary evidence of her completion of her goals. Instead, the testimony was clear that Mother made little to no progress. Ms. Graves testified that Mother had not completed any of her goals. N.T. at 17. The trial court was free to credit this testimony rather than Mother's testimony. Based upon those credibility determinations, the record supports the trial court's conclusion that Mother has not corrected the conditions that have caused the Children to be without parental care and control. The trial court did not err in finding the requirements for subsection 2511 (a)(2) had been satisfied.

We next review the trial court's conclusion that subsection 2511 (b) was met. The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). As part of this determination, our case law requires the evaluation of any parent-child bond. *In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). However, this Court has held that

the trial court is not required to order a formal bonding evaluation performed by an expert. *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

In support of her claim that the trial court erred in terminating her parental rights pursuant to subsection 2511 (b), Mother claims that "G.D. and A.V. has [*sic*] lived with their mother for the first years of their lives and has [*sic*] a strong bond with their mother. (N.T. at 13)." Mother also claims that she has a bond with S.D. Mother's Brief at 13. However, the record does not support these claims.

Instead, the testimony supports the conclusion that neither G.D. nor V.A. had a parent-child bond with Mother. Mother has not seen them since October 2012. We are aware that this is when G.D. and V.A. moved to Maine, making visitation impractical. However, G.D. and V.A. had been in foster care for two years prior to October 2012 and Mother's visitation with them was inconsistent before the move. N.T. at 18. Also, Mother consented to the move. G.D. and V.A. are bonded with their foster parents and are in a loving, nurturing environment with their foster parents and foster siblings. N.T. at 37. Ms. Graves opined that neither would be harmed by the termination of Mother's parental rights. *Id.* at 25-27.

S.D. lived with Mother for her first five months before she was placed in foster care, where S.D. has remained since that placement. S.D. is bonded with her foster mother. N.T. at 27. While Mother has had visitation with S.D., it has been supervised and not consistent. *Id.* at 40-41. S.D. would not be harmed by the termination of Mother's parental rights. *Id.* at

42.  Felicia Silva, an agency social worker, testified that S.D. views her foster parent as her parent and that adoption would be in S.D.'s best interest.  *Id.* at 43.  Based upon the record evidence, the trial court did not abuse its discretion when it determined that the termination of Mother's parental rights was in the best interests of the developmental, physical and emotional needs and welfare of the Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/26/2014