J-A34039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: D.H.-W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.S., JR. | |
| | No. 1294 MDA 2015 |

Appeal from the Decree June 22, 2015
In the Court of Common Pleas of Lycoming County
Orphans' Court at No(s): 6466

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 15, 2016**

Appellant J.S., Jr. ("Father") appeals from the decree entered in the Lycoming County Court of Common Pleas, which terminated his parental rights to D.H.-W. (born February 4, 2014) ("Child").[1]  We affirm.

The trial court set forth the relevant facts of this appeal as follows:

> The court entered an order [for] emergency protective custody on February 6, 2014. The allegations which led to emergency protective custody centered around Mother's past agency involvement, including the termination of parental rights of four of her children, Mother's criminal sentencing order prohibiting her from caring for children, and the fact that the alleged biological father,[2] [Father],

_____

[1] The decree also terminated the parental rights of S.H. ("Mother"), who did not appeal.

*(Footnote Continued Next Page)*

was under the supervision of the Adult Probation Office. A shelter care hearing was held February 7, 2014. At the time of the shelter care hearing, the court ordered [Father] to undergo a paternity test to determine if he was [Child's] natural father. All parties waived the 10 day requirement of the dependency hearing.

The Child was adjudicated dependent on March 10, 2014. At the time of the hearing, it was confirmed that [Father] was [Child's] biological father. Mother and Father were living together at the time of the dependency hearing. Due to Mother's prior history of abuse and neglect, which led to the termination of parental rights as to four of her children, the court determined [Child] to be without proper parental care or control in Mother's care. The court was concerned that [Child] would be without proper parental care and control in Father's home. Specifically, the court was concerned about Father meeting [Child's] basic needs but felt those issues could resolve through coaching and learning parenting skills. The court found that Father did not have the protective capacity to protect Child from Mother. Father candidly admitted to this fact. The court was concerned with both parents['] anger issues and inability to control their frustration. Father was strongly urged to cooperate with the Agency. The court found aggravated circumstances as to Mother. [Child] remained placed in the kinship home.

A permanency review hearing was held on April 1, 2014. At that time, the court reaffirmed dependency of [Child], and [Child] remained in kinship care. The court found that during this review period, Mother became incarcerated for assaulting Father. Mother's visits were suspended. The court found Mother would be a grave threat to [C]hild if visitation were to continue. Father made moderate progress towards alleviating the circumstance[s] which led to placement. Father was consistent in his visits and

_(Footnote Continued)_ ————————————

[2] When Child was born, Mother was married to W.H., not Father. A subsequent paternity action revealed Father was the biological father of Child.

growing more comfortable with caring for his child. The Agency reported Father was cooperative and that they had seen considerable improvement. Father was ordered to work with Outreach Services to help with his financial and parenting responsibilities.

A permanency review hearing was held on July 14, 2014. Dependency of [Child] was reaffirmed, and [Child] remained in kinship care. Mother remained incarcerated. The court found Father made minimal progress toward alleviating the circumstances [that] necessitated placement. Father did attend almost all of his visits and provided appropriate and necessary items. Father continued to struggle with learning parenting skills and was making slow progress. The court directed the Agency to work closely with Expectations for Women [("Expectations")], the provider of Father's parenting classes. The court was concerned with Father's reluctance to take Agency advice.

A permanency review hearing was held on October 6, 2014. Dependency of [Child] was reaffirmed, and [Child] remained in kinship care. Mother continued to be incarcerated. Father continued in his same residence as the time of the initial proceedings, despite the financial difficulties of his sole income being that of Social Security Disability. The court found Father made significant gains during this review period. Father was working with the Agency Outreach Worker and [Expectations]. The court found Father was unable to care for Child on his own, especially as [Child's] needs change. The Agency intended to increase Father's visitation and expand visits into his home, but the visits were to remain observed.

A permanency review hearing was held on January 7, 2015. Dependency of [Child] was reaffirmed, and [Child] remained in kinship care. Mother remained incarcerated. The court found that Father was minimally compliant in his effort to alleviate the circumstance[s] [that] led to placement in that he remained unable to provide appropriate care for Child. The court directed an evaluation to assess Father's readiness to assume responsibility for [Child]. The court notes that the issue was Father's inability to care for [Child].

On March 24, 2015, the Agency filed a petition to involuntarily terminate the parental rights of both Mother and Father in regard to [Child]….

A permanency review hearing was held on April 8, 2015. Dependency of [Child] was reaffirmed, and [Child] remained in kinship care. Mother remained incarcerated. Father continued to attend visits on a regular basis, attended counseling, and took his prescribed medicine. Father also resumed attending parenting classes at Expectations. The court was unable to determine whether Father had made any progress in his ability to care for [Child] on his own.

Visitation Coordinator, Harvey Edwards, has been observing Father's visits with [Child] since February 11, 2014. The visits occur three days per week and last four hours each visit. Prior to Mother's incarceration, Mother participated in supervised visitation. In the period of January 2015, until May 2015, Father attended 46 of 52 scheduled visits. Mr. Edwards observed that when visits began last year, Father just watched [Child]. Mr. Edwards had to encourage Father to interact with Child. Mr. Edwards reported that Father still struggles to this date. Mr. Edwards continuously monitors Father because, at times, Father gets angry. Father gets irritated when Child does not listen to him. Father speaks in a harsh and elevated tone to Child. Mr. Edwards testified to a lack of progress in Father's ability to parent. He testified that Father cannot do things independently. Mr. Edwards described one specific occasion when Father failed to address [Child's] unhappiness at a restaurant. Despite Mr. Edwards' prompts, Father continued eating, and Mr. Edwards was forced to pick up [Child] and address his needs. In a separate incident, Father did not notice [Child] was ill and had a fever. Mr. Edwards felt [Child] was warm and intervened. [Child] is always happy to be returned to his kinship care providers at the end of the visits with Father.

Crystal Minnier is the ongoing caseworker in this matter. Ms. Minnier was involved in the cases regarding Mother's other children. Ms. Minnier testified that Mother has had no

contact with Child since she became incarcerated. Mother has written letters to Ms. Minnier regarding Child. Ms. Minnier testified that Father has maintained the same residence since prior to the Agency's involvement. Father and Mother began parenting classes with Expectations prior to Agency involvement. Ms. Minnier encouraged Father to seek services for [the] intellectually disabled. Father was not interested as he had those services in high school and did not see a need. Father does not wish to seek employment. Ms. Minnier believes Father has exhausted any resource available to him. Father is currently in individual counseling for anger management and [is] medication compliant (pursuant to the terms of the Adult Probation Office). Despite diligent search efforts, family resources for Father have not been located.

Ms. Minnier has not seen progress in Father's ability to care for [Child]. Father continues to have the inappropriate expectation that his very young son knows what he is saying. Father's frustration and anger continues, and Agency staff is always present to intervene. For example, Father expects Child to remain still when told and believes [Child] is deliberately disobeying him. Ms. Minnier believes Father loves his son. However, Ms. Minnier does not believe Father will ever be able to develop the skills necessary to care for [C]hild on a full[-]time basis. Ms. Minnier described that, despite over a year of regular visits, she remains concerned [Child] will be harmed in Father's care.

In [Child's] resource home, he resides with two of his siblings. Mother's rights had previously been terminated to the two siblings.

Bruce Anderson is a licensed psychologist who evaluated Father and testified at the time of the hearing. Mr. Anderson reported that Father has an intellectual limitation and low I.Q. Father is concrete in his thinking and able to comply with a simple instruction. Mr. Anderson found that Father is unable to comprehend [Child's] developmental changes. Mr. Anderson found that Father would not be able to care for Child on his own. He also found that Child would not be safe with Father full time.  Further, Mr. Anderson testified that Father would never get to the point

where he could provide full time care. Mr. Anderson found that while Father is strongly bonded to Child, Child is strongly bonded to the resource parents.

Judith Jones testified as Child's court[-]appointed special advocate. Ms. Jones was present for at least ten visits with Child and Father and observed at those visits that Child lures Father into interacting with him, rather than Father engaging the interaction.

Both [r]esource parents testified to their relationship with Child and willingness to assume role of parent.

Loretta Clark, Father's adult probation officer, confirmed that Father was on probation as a result of a sentence for two counts of aggravated assault. Father meets with the probation office every other month and has been compliant. Father is likely to remain on probation until 2017. Ms. Clark testified that the adult probation office's conditions that Father attend counseling and remain on medication were to address his anger issues.

Father's attorney offered no evidence at the time of the hearing. Father did not testify.

Mother testified that she expects to be released in the summer of 2015 as she has already surpassed her minimum sentence date. Mother has completed a violence prevention program. Mother does not wish for her rights to be terminated. Mother was not sure if the term of her sentence which required her not to care for children would remain a restriction after her release.

Trial Court Opinion, filed June 22, 2015, at 2-8 (some capitalization omitted).

On June 22, 2015, the trial court issued a decree that involuntarily terminated the parental rights of Mother and Father. On July 17, 2015, Father timely filed a notice of appeal.[3]

Father raises the following question for our review:

> WHETHER THE EVIDENCE PRESENTED AT TRIAL WAS SUFFICIENT TO SUPPORT THE COURT'S TERMINATION OF [FATHER'S] PARENTAL RIGHTS UNDER 23 PA.C.S.[] § 2511(A)(5) AND (8) ON THE BASIS THAT "THE CONDITIONS WHICH LED TO THE ORIGINAL REMOVAL OF THE CHILD STILL CONTINUE TO EXIST TO DATE" WHERE AT NO POINT IN [CHILD'S] LIFE HAD [FATHER] BEEN GIVEN THE OPPORTUNITY TO TAKE ON FULL RESPONSIBILITY FOR [CHILD] AND EVIDENCE OF [FATHER'S] INCAPACITY OR INABILITY TO PROPERLY CARE FOR [CHILD] WAS PURELY SPECULATIVE IN NATURE?

Father's Brief at 7.

Father argues that, because he was never given an opportunity to care for Child on his own, the evidence presented at trial was insufficient to establish that Father continued to fail to provide for Child pursuant to 23 Pa.C.S. § 2511(a)(5) and (8). We disagree.

Our scope of review in an appeal terminating parental rights is comprehensive:

> [W]e consider all the evidence presented as well as the trial court's factual findings and legal conclusions.

---

[3] On July 23, 2015, the trial court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), because he had not filed one with his appeal pursuant to Pa.R.A.P. 1925(a)(2). Father complied with the court's request on July 28, 2015.

However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted).

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super.2004) (citations omitted).

"In a proceeding to involuntarily terminate parental rights, the burden of proof is upon the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa.Super.2004) (internal quotations and citation omitted).

Here, the trial court found grounds for termination based on Subsections (a)(5) and (8) in addition to Subsection (b) of 23 Pa.C.S. § 2511, which governs requests to terminate a natural parent's parental rights, and provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare

of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of 23 Pa.C.S. § 2511(a), in addition to § 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa.2004).

Here, the court properly first looked to 23 Pa.C.S. § 2511(a) for the basis of involuntary termination and found that grounds for termination existed under subsections (5) and (8). Specifically, the trial court found that Child had been removed from his parents for 16 months. The court found that the conditions that led to the removal from Father, namely Father's intellectual difficulties, continued to exist. The court found that, although Father had improved his parenting skills, he was unable to adjust his parenting to the changing developmental needs of Child and that terminating his and Mother's rights would best serve the needs and welfare of Child.[4]

_____

[4] The trial court also noted that, although Father made a compelling argument that he had not been given an opportunity to take full
*(Footnote Continued Next Page)*

- 10 -

The trial court then considered other factors pursuant to 23 Pa.C.S. § 2511(b) and found Child was strongly bonded with his resource family, with whom he had resided since birth, and that the termination of both Mother and Father's parental rights would not destroy an existing, necessary and beneficial relationship.

The hearing court's findings are supported by competent evidence of record. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/2016

---

*(Footnote Continued)*

responsibility for Child, his argument failed to negate the requirements of the statute.