J-S13017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: X.J.N., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.C., MOTHER | No. 1839 EDA 2016 |

Appeal from the Order Entered May 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000314-2015

\*\*\*\*\*

| IN THE INTEREST OF: O.A.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.C., MOTHER | No. 1840 EDA 2016 |

Appeal from the Order Entered May 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000315-2015

\*\*\*\*\*

| IN THE INTEREST OF: N.A.N., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.C., MOTHER | No. 1841 EDA 2016 |

Appeal from the Order Entered May 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000316-2015

\*\*\*\*\*

J-S13017-17

| IN THE INTEREST OF: J.A.N., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.C., MOTHER | No. 1844 EDA 2016 |

Appeal from the Order Entered May 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000317-2015

*****

| IN THE INTEREST OF: J.J.N., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.C., MOTHER | No. 1845 EDA 2016 |

Appeal from the Order Entered May 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000318-2015

*****

| IN THE INTEREST OF: A.B.N., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.C., MOTHER | No. 1846 EDA 2016 |

Appeal from the Order Entered May 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000319-2015

- 2 -

J-S13017-17

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 10, 2017**

V.C. (Mother) appeals from the orders[1] entered in the Court of Common Pleas of Philadelphia County, which terminated her parental rights as to her minor children, X.J.N., O.A.C., N.A.N., J.A.N., J.J.N., and A.B.N. Upon careful review, we affirm.

The salient facts of this matter are as follows. X.J.N., at age 12, had been excessively truant while residing with Mother, which led to the Department of Human Services (DHS) becoming involved with the family during the 2011 to 2012 school year. In July 2012, it was reported that X.J.N. hit one of his brothers with a plastic golf club and that Mother took the golf club and hit X.J.N. in the chest with it. Mother was allegedly noncompliant with court-ordered therapy and lacked stable housing at that time. In 2012, both X.J.N. and J.J.N. were adjudicated dependent with DHS supervision based upon excessive truancy, although foster care was recommended for all of the children.

In addition to facing mental health issues and unemployment, Mother also used phencyclidine (PCP) and admitted to a history of alcohol abuse.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Mother filed separate appeals regarding each order, all of which have been consolidated in the instant appeal.

- 3 -

Eventually, DHS fully committed X.J.N. and J.J.N. to DHS,[2] and the other four children were also placed in foster homes.[3] Mother continued to test positive for PCP and then began to test positive for benzodiazepines and opiates beginning in 2014. Mother also became inconsistent with visits and at times refused them during 2014 and 2015. Mother has not made significant progress regarding her Family Service Plan (FSP) goals of complying with treatment recommendations, including drug and alcohol treatment, parenting classes, mental health treatment, obtaining a General Equivalency Diploma or completing job training program, and appropriately participating in visitation with her children.

After DHS filed a petition for termination of parental rights, on May 2, 2016, a hearing was held and the court determined that Mother's parental rights as to each child should be terminated. The court found it to be in the best interests of the children that the goal for each child be changed to adoption. This timely appeal followed, in which Mother raises the following issues for our review:

> 1. Did the trial court abuse its discretion and commit[] legal error in terminating Mother's parental rights under [23 Pa.C.S. § 2511(a)(2)], because no clear and convincing

---

[2] J.J.N. and X.A.N. were placed with their paternal grandmother.

[3] A.B.N., N.N.N., and O.A.C. were placed with a foster family, and J.A.N. was placed with paternal grandmother.

evidence was presented to meet the statutory requirements under this section?

2. Did the trial court abuse its discretion and commit[] legal error in terminating Mother's parental rights under [23 Pa.C.S. § 2511(a)(5)], because no clear and convincing evidence was presented to meet the statutory requirements under this section?

3. Did the trial court abuse its discretion and commit[] legal error in terminating Mother's parental rights under [23 Pa.C.S. § 2511(a)(8)], because no clear and convincing evidence was presented to meet the statutory requirements under this section?

4. Did the trial court abuse its discretion and commit[] legal error in terminating Mother's parental rights under [23 Pa.C.S. § 2511(b)],[4] because the Department of Human

_____

[4] 23 Pa.C.S. § 2511 provides the following:

   (a)  General rule. — The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

   . . .

   (2)  The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

   . . .

   (5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the

*(Footnote Continued Next Page)*

Services failed to prove by clear and convincing evidence that the needs and welfare of children would be served by severing the parental bond with their Mother?

Brief for Appellant, at 6.

*(Footnote Continued)* ─────────────

parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

(b) Other considerations. — The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. §§ 2511(a)(2), (a)(5), and (b).

In a proceeding involving the involuntary termination of parental rights,

> the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). As to our standard of review, "[w]e review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *In re Adoption of G.L.L.*, 124 A.3d 344, 346 (Pa. Super. 2015) (citations omitted).

In considering termination under section 2511(a)(2), we note that the party seeking involuntary termination must prove: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008). These grounds

> are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform

parental duties. Nevertheless, parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.

*Id.*

Instantly, Mother has failed to meet the needs of her children as would be accomplished through meeting her FSP objectives. The trial court noted that during the four-year life of this case, Mother has not progressed from supervised to unsupervised visits. N.T. Termination Hearing, 5/2/16, at 102. The court also indicated concern "that during the life of this case[, the children] put forth assertions that [Mother] was physically abusive and tried to drown the[m,]" which were never recanted. *Id.*

Mother indicates in her argument that an agency worker testified to observing that Mother's interaction with one of the children was always appropriate, that she was attentive and that they played together appropriately. Brief for Appellant, at 13. However, this is ultimately not nearly enough, since Mother was not able to provide housing or parental care for her children. Indeed, she was not even able to progress to unsupervised visits over the course of this case. Accordingly, the court ultimately found that Mother had not "embraced [the] tools [to] empower her to get her children back," and we are constrained to agree. *S.M.*,

- 8 -

*supra*. Accordingly, the grounds for termination have been met pursuant to section 2511(a)(2).[5]

Before granting a petition to terminate parental rights under section 2511(b), we must:

> carefully consider the **intangible** dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

*In re K.J.*, 936 A.2d 1129, 1134 (Pa. Super. 2007). The court must consider "whatever bonds may exist between the children and [parent], as well as the emotional effect that termination will have upon the child[.]" *In re Adoption of A.C.H.*, 803 A.2d 224, 229 (Pa. Super. 2002).

In support of her argument on this issue, Mother contends that the court failed to adequately examine the natural bond between Mother and her children. Specifically, Mother cites to testimony indicating that X.J.N. has indicated he would like to go home, but if he cannot, he would like to stay with his grandmother. N.T. Termination Hearing, 5/2/16, at 54-55. Mother also notes testimony that each of the other children would like to go home

---

[5] We need only agree with trial court's decision as to any one subsection under section 2511(a) in order to affirm termination of parental rights. *In the Interest of B.C.*, 36 A.3d 601, 606 (Pa. Super. 2012).

with her. Brief for Appellant, at 25-26. *See In re T.F.*, 847 A.2d 738, 743 (Pa. Super. 2004) (testimony presented should "separately address the effect that the termination would have on each child individually.")

However, as this Court has previously noted, "concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound." *In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Moreover, the statements that Children were asking about coming home can be viewed as suspect since the court found that Mother may have misleadingly told Children they were coming home. *See* Termination Hearing, 5/2/16, at 103.

In determining that termination of Mother's parental rights was in the children's best interest, the court noted that Children have relationships with their grandmother and have indicated that they have accepted that they cannot go home if that decision is made. *Id.* at 106. *A.C.H.*, *supra*. As in *G.L.L.*, *supra*, we uphold the ruling of the lower court since "we cannot re-weigh the evidence or the credibility assessments made by the trial court." *Id.* at 348. Instantly, the trial court's decision to terminate Mother's parental rights is supported by the record, and we discern no error or abuse of discretion.

Order affirmed.

BENDER, P.J.E., Joins the memorandum.

FITZGERALD, J., Concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/10/2017