J-S08028/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: M.S.G. : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: V.C., NATURAL MOTHER :
: No. 1303 WDA 2015
:

Appeal from the Order August 3, 2015,
in the Court of Common Pleas of Somerset County,
Orphans' Court Division, at No. 6 Adoption 2015

BEFORE: STABILE, DUBOW, AND MUSMANNO, JJ.

MEMORANDUM BY DUBOW, J.: **FILED MARCH 22, 2016**

V.C. (Mother) appeals the Order of the Court of Common Pleas of Somerset County that granted the petition of Child's maternal great aunt and great uncle, B.J. and T.J. (Great Aunt and Great Uncle), to terminate Mother's parental rights to M.G. (Child), born May 9, 2011.[1] We affirm.

The record supports the following summary of the facts of this case. When Child was approximately thirteen months old, Mother asked her grandmother, Maternal Great Grandmother, to babysit for the Child and indicated that she would bring Child to Great Grandmother's home. When Mother and Child never showed up, Great Grandmother went to Mother's apartment and found Mother lying unresponsive on the floor with Child unattended. Great Grandmother contacted CYS.

---

[1] The trial court also terminated Father's parental rights. Father did not appeal that determination.

CYS placed Child briefly with Maternal Great Grandmother, and shortly thereafter, with Child's Great Aunt and Great Uncle. Child has lived with her Great Aunt and Great Uncle since she was approximately a year old. At the time of the termination hearing in August 2015, Child was four years old.

Mother, who is an admitted heroin addict, has been involved in several criminal incidents and has been incarcerated several times since Child's birth. Although Mother visited with Child by agreement of all parties, her visits declined in frequency as time passed. Child refers to Mother as "[G …] " or "Mommy [G …]." N.T. 8/3/15 (N.T.), at 15. She refers to Great Aunt as "B" and Great Uncle as "[T … ]" and collectively calls them "family." N.T., at 14, 15, 65, and 67. Mother's last visit with Child was in April 2015 at a local diner, along with Great Aunt and Maternal Grandmother. Prior to that visit, Mother had not seen Child since December 2014.

Mother was again incarcerated in May 2015. She remains incarcerated while she awaits the disposition of her current criminal case. Mother has not made any effort to contact Child, via mail, telephone or otherwise, since becoming incarcerated.

On May 21, 2015, Great Aunt and Great Uncle filed their Petition to Terminate Mother's and Father's Parental Rights so they could adopt Child.

On August 3, 2015, the trial court held a hearing on the petition. Great Aunt and Great Uncle testified and presented the testimony of Child's Great Grandmother and Father. Mother testified on her own behalf.

On August 5, 2015, the trial court entered its Order terminating Mother's and Father's parental rights. Mother filed her Notice of Appeal on August 14, 2015, and her Concise Statement of Errors Complained of on Appeal with this Court on September 29, 2015.

Mother raises the following issues on appeal:

1. The Trial Court erred in finding that statutory grounds existed for the termination of [Mother's] parental rights, pursuant to 23 Pa.C.S.A.§ 2511(a)(1)[,](2) specifically:

   a) That [Mother] by conduct continuing for a period of at least six months preceding the filing of the petition for termination, has evidenced a settled purpose of relinquishing parental claim to the child or has refused or failed to perform parental duties;

   b) That [Mother] has exhibited repeated and continued neglect or refusal to to parent and such failure has caused the child to be without essential parental care, control or subsistence necessary for her physical care, control or subsistence necessary for her physical care or mental well-being and the causes of the neglect or refusal cannot or will not be remedied.

2. The Trial Court erred in finding that termination of [Mother's] parental rights was in the best interests of the child. 23 Pa.C.S.A. §2511(b).

[3.] The Trial Court did not require a Statement of Errors Complained of pursuant to Pa.R.A.P. 1925(b).

Mother's Brief, at 5-6.

As we begin our analysis, we note that Mother has failed to append a copy of the Trial Court Opinion to her Brief as required by Pa.R.A.P. 2111(a) and (b). Such an omission may be cause for the waiver of an Appellant's issues raised on appeal. However, since

Mother's omission hampers our review but does not prevent it, we will

not consider her issues waived.

Our standard of review of parental rights termination orders is as

follows:

> In an appeal from an order terminating parental rights, our
> scope of review is comprehensive: we consider all the evidence
> presented as well as the trial court's factual findings and legal
> conclusions.  However, our standard of review is narrow: we will
> reverse the trial court's order only if we conclude that the trial
> court abused its discretion, made an error of law, or lacked
> competent evidence to support its findings. The trial judge's
> decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated that we must accept the trial court's findings

so long as they are supported by competent evidence:

> Where the hearing court's findings are supported by competent
> evidence of record, we must affirm the hearing court even
> though the record could support an opposite result.

> We are bound by the findings of the trial court which have
> adequate support in the record so long as the findings do not
> evidence capricious disregard for competent and credible
> evidence.  The trial court is free to believe all, part, or none of
> the evidence presented, and is likewise free to make all
> credibility determinations and resolve conflicts in the evidence.
> Though we are not bound by the trial court's inferences and
> deductions, we may reject its conclusions only if they involve
> errors of law or are clearly unreasonable in light of the trial
> court's sustainable findings.

*In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations

omitted).

The trial court terminated the parental rights in question here pursuant to 23 Pa.C.S.A. §§2511(a)(1), (2), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

The basis for terminating parental rights is governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. …

23 Pa.C.S.A. § 2511.

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In*

*re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further, this Court has noted that parents must "utilize all available resources" and "resist[] obstacles placed in the path of maintaining the parent-child relationship. *"In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008). "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id*.

To terminate parental rights pursuant to Section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, "for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

In evaluating Section 2511(a)(1), the court should consider the parent's explanation for his or her conduct and the degree of contact between the parent and child. *In re Adoption of Charles E.D.M.*, 550 A.2d 595, 602, 708 A.2d 88, 92 (Pa. 1988). Further, "the trial court must consider the whole history of a given case" and "consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly

warrants the involuntary termination. *In re N.M.B.*, 856 A.2d 847, 854-855 (Pa. Super. 2004) (citations omitted).

In the instant case, the trial court concluded that Mother failed to perform any parental duties for a period of at least six months immediately preceding the filing of the petition. The basis of the court's decision was that Mother's conduct of criminal activity and drug use is inconsistent with parenting, and her failure to make an effort to contribute to her child's care and support evidenced a settled purpose of relinquishing claim to her daughter. *See* Trial Court Op., dated 11/6/15, at 10 (unpaginated).

Mother first claims that "the testimony shows that [Mother] has made every effort possible to be a mother to her child in spite of the nearly insuperable barriers that appellees placed in [Mother's] path." Mother's Brief at 12. The thrust of Mother's argument is that she was unable to parent Child because Great Aunt would not permit her to come to her house, and that Great Aunt refused to permit Mother to speak with Child when she called the house.

We agree with the finding of the trial court that Great Aunt's refusal to permit Mother to visit her house was justified:

> Appellees testified that the reason [Mother] was not welcome at their residence was that she had a history of stealing from them and they were afraid to give her access to another opportunity. Their concern appears to be well founded inasmuch as [Mother] has pending theft charges and prior burglaries for which her parole was revoked. . . . [Great-Aunt] also testified that the recent criminal activity was known to have occurred at her

residence, and accordingly, we would find that, again, her concerns were well founded.

Trial Ct. Op., 11/6/15, at 9 (unpaginated).

The trial court also properly found Great Aunt's refusal to permit Mother to speak with Child was a result of Mother's angry and threatening tone:

> Appellees credibly testified that the telephone calls from Mother were angered and threatening that she would 'come and pick up her daughter,' essentially without the permission of the lawful custodians, the Appellees. Ultimately, Appellees would not accept her telephone calls, thereby creating another obstacle for Mother. [Mother] decided to treat this as an insurmountable obstacle without taking any further action to enforce her parental rights.

*Id*.

The trial court properly concluded that Mother herself created the obstacles that prevented her from being able to provide safety, security, and stability for Child:

> [T]here were many family members who would have helped her if she was able to show them that she was sincere about putting her drug use behind her and start becoming [sic] a responsible citizen. She had no job, no safe residence, no money, no children's clothing, and no apparent desire to put on a good appearance for her family to gain their trust.

*Id.*

In order to parent a child, a parent must be able to provide, at a minimum, safety, security and stability for a child. In this case, as the trial court observed, Mother's substance abuse prevented her from providing these basic parental duties for Child not only for the six months before the

Great Aunt and Great Uncle filed the termination petition, but for the entire life of Child.

Moreover, Mother made minimal effort to perform any parental duties for Child during Child's life, and any obstacles that Mother faced in obtaining contact with Chld were created by Mother. The trial court properly found that Petitioners met the requirements of Section 2511(a)(1).

In her second issue, Mother complains, "[T]he trial court did not undertake an examination of the parent-child bond under 25 Pa.C.S.A. §2511(b)." Mother's Brief at 15. We disagree.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of whether a meaningful bond exists between the parent and child. *See In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

The trial court properly articulated the strong relationship that Child has developed with Great Aunt and Great Uncle as a result of their meeting all of her needs for an extended period of time. In contrast, Mother has

done little to care for Child and has not developed a meaningful relationship with Child. As the trial court properly observed:

> [Child], now four years of age, is thriving by the grace of [Great Aunt and Great Uncle] who have created a world of care for [Child] which was, and is, not possible with Mother. Parenting means being there for the child on a day in day out basis to feed, clothe, nurture, and protect [Child] until she can fend for herself. Historically, Mother has contributed little to the parenting effort, *i.e.*, she has failed to pay any support, has failed to engage in her medical decision making, failed to be there for her when she needs comfort in the middle of the night, and failed to provide transportation, shelter, clothing, and life's necessities.

Trial Ct. Order at 10.

Our review of the record reveals that the record evidence supports the trial court's analysis of Child's best interests. Great Aunt and Great Uncle are providing for Child's physical and emotional needs and well-being. Since Mother has made minimal effort to have a relationship with Children, the Child does not have a meaningful bond with Mother and severing that bond will not be detrimental to Child. As the trial court observed, terminating Mother's parental rights will permit Child, "to get on with her little life with parents who love her and know the proper decisions to be made in parenting." Trial Ct. Op. at 11. Child's *guardian ad litem* supports the termination of Mother's parental rights. **See** Brief of M.S.G. Therefore, the trial court did not abuse its discretion or err as a matter of law in concluding that Great Aunt and Great Uncle had met their burden with respect to 23 Pa.C.S. § 2511(b).

Regarding her third issue, Mother misreads our law. Our Rules of Appellate Procedure require an appellant in a Children's Fast Track Case to file a Concise Statement of Errors Complained of on Appeal with his or her Notice of Appeal. It is not the responsibility of the trial court to order that filing. Pa.R.A.P. 905(a)(2) and 1925(a)(2)(i). Mother's third issue has no merit.

For foregoing reasons, we affirm the Order of the Court of Common Pleas of Somerset County terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(1) and (b).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2016