J-S65045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ADOPTION OF: L.J.C. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.G., NATURAL MOTHER | No. 690 WDA 2016 |

Appeal from the Order Entered April 1, 2016
in the Court of Common Pleas of Cambria County
Orphans' Court at No.: 2015-782 IVT

BEFORE: LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 24, 2016**

Appellant, K.G. (Mother), appeals from the order granting the involuntary termination of her parental rights to her son, L.J.C. (Child), born in September of 2011, and changing his goal from return to parent to adoption.[1] We affirm on the basis of the trial court opinion.

On August 20, 2015, Cambria County Children and Youth Services (CYS) filed a petition to terminate Mother's parental rights to Child. The trial court aptly explained the events that led CYS to file that petition in its order and opinion entered April 1, 2016. (**See** Trial Court Order and Opinion, dated March 31, 2016, filed April 1, 2016.) We respectfully direct the reader

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court also terminated the parental rights of Child's father, R.C. Father did not appeal.

to that order and opinion for a more thorough summary of the facts of this case.

For the convenience of the reader, we note briefly that CYS became involved on May 17, 2012, after receiving a report of domestic violence involving Mother and Father. Further investigation revealed other issues involving finances, poor parenting skills, and housing instability as well as drug use by both Mother and Father, who were only seventeen and eighteen, respectively, at the time. Mother was only minimally compliant with the permanency plan CYS provided to her. Mother's progress was inhibited by mental health issues and related problems. Eventually, CYS exhausted its available services.

The trial court held hearings on CYS' petition on November 23, 2015, February 22, 2016, and February 29, 2016.[2] The trial court entered its order terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511 (a)(1), (2), (5), (8) and (b) on April 1, 2016. Mother filed a timely notice of appeal and statement of errors complained of on appeal on April 27, 2016. *See* Pa.R.A.P. 1925(b). The trial court filed a Rule 1925 statement on May

_____

[2] Testifying at those hearings, in addition to Mother and Father, were CYS caseworker, Alex Martin; CYS casework supervisor, May Popovich; psychologist, Dennis Kashurba; Independent Family Services (IFS) home management coordinator, Kathy Scaife; IFS family resource professional, Sarah Bantly; Child's grandmother, L.K.; Mother's outpatient therapist, psychologist Erin Bougher; and court-appointed special advocate (CASA), Ellen Shayesteh, D.O.

17, 2016, referencing its order and opinion dated March 31, 2016 (filed on April 1, 2016). *See* Pa.R.A.P. 1925(a).

Mother raises the following question on appeal:

1. Whether the [c]ourt either abused its discretion or commited an error of law when it granted the [p]etition for [i]nvoluntary [t]ermination of [p]arental [r]ights, thereby terminating the parental rights of [Mother] to [Child][?]

(Mother's Brief, at 2).

Mother challenges the sufficiency of the evidence. (*See* Mother's Brief, at 2). She maintains that she evidenced a purpose to get Child back, not to give up her parental claim. (*See id.* at 6).

Part III of the Domestic Relations Code is known and referred to in whole as the Adoption Act. *See* 23 Pa.C.S.A. § 2101. The Adoption Act consists of five chapters and numerous respective subchapters; those provisions most relevant to this case appear in Chapter 25 (governing proceedings prior to petition to adopt including termination of parental rights); and to a lesser extent, Chapter 27 (governing the petition for adoption) and Chapter 29 (governing decrees and records). *See* 23 Pa.C.S.A. §§ 2501-2903. Adoption in Pennsylvania is purely a statutory right. *In re Adoption of R.B.F.*, 569 Pa. 269, 276, 803 A.2d 1195, 1199 (2002). Strict compliance with the Adoption Act is a prerequisite to the court's jurisdiction to hear a petition to terminate parental rights in connection with a proposed adoption. *In re Adoption of J.F.D.*, 782 A.2d 564, 565 (Pa. Super. 2001) (citing *In re Adoption of W.C.K.*, 748 A.2d 223, 226 (Pa. Super. 2000), *appeal denied*, 567 Pa. 745, 788 A.2d 378 (2000)).

*In re E.M.I.*, 57 A.3d 1278, 1284-85 (Pa. Super. 2012).

Our standard of review for a challenge to the involuntary termination of parental rights is well-settled:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Furthermore:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511. Here, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). (*See* Order and Opinion, at 9-11). To affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.3d 1141 (Pa. 2004). Section 2511(a)(1) provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

      **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

    (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused to perform parental duties.

*   *   *

      **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511 (a)(1), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re T.F.***, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

    A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental

- 5 -

responsibilities while others provide the child with his or her physical and emotional needs.

***In the Interest of K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted.)

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. ***See In re Adoption of M.E.P.***, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to a termination pursuant to subsection 2511(a)(1), our Supreme Court has explained:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights [pursuant to Section 2511(a)(1)], the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

***Matter of Adoption of Charles E.D.M, II***, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). Further,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

- 6 -

*In re N.M.B.*, 856 A.2d 847, 854-55 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 533 Pa. 115, 620 A.2d 481 (1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Appellant has raised on appeal. The trial court opinion properly disposes of the questions presented. (*See* Trial Court Order [and Opinion], 4/01/16, at 8-11) (concluding: (1) Mother's inability to resolve the various issues which caused the removal of Child still exist today, more than thirty-four months later; (2) Mother has failed to complete the necessary programs to achieve reunification; (3) the safety of Child to be free from domestic violence is still a continuing concern; (4) for a period of six months immediately preceding the filing of the petition Mother evidenced a settled purpose of relinquishing her parental claim to Child or had refused or failed to perform parental duties; and (5) termination of Mother's parental

rights will best meet the developmental, physical and emotional needs and the welfare of Child)).

Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/24/2016

S65045-16

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PA
ORPHANS' DIVISION

IN RE  ADOPTION OF     :     No. 2015-782 IVT
L▮▮▮ J▮▮▮ C▮▮▮     :
                  :
                  :

*******

APPEARANCES:

  For the Petitioner:        TONILYN CHIPPIE KARGO, ESQ.

  For K▮▮▮ M▮▮▮ G▮▮▮:     SUZANN M. LEHMIER, ESQ.

  For R▮▮▮ L▮▮▮ C▮▮▮:     PRO SE

  For the Child:           DEVON CASTI, ESQ.

*******

## ORDER

AND NOW, this 31st day of March, 2016, after conducting evidentiary hearings following due notice, the Court makes the following findings and judicial determinations:

1.  On August 20, 2015, Petitioner, Cambria County Children and Youth Services ("CYS"), filed a petition to terminate the parental rights of K▮▮▮ M▮▮▮ G▮▮▮, age 20, and R▮▮▮ L▮▮▮ C▮▮▮, age 21, the biological parents of L▮▮▮ J▮▮▮ C▮▮▮, DOB 9/22/2011.  The grounds averred include 20 Pa.C.S. Section 2511(a) Subsections (1), (2), (5), and (8).

2.  Mother filed a petition for appointment of counsel and counsel was appointed for mother and child.  Father neither sought *in forma pauperis* status, nor requested



counsel and proceeded *pro se*.

3. Hearings were held on November 23, 2015; February 22, 2016; and February 29, 2016. Both parents appeared and testified.

4. The evidence presented showed that on May 17, 2012, CYS became involved after receiving a report regarding the family alleging domestic violence involving K█████ and R████.

5. A subsequent investigation by CYS raised issues of finances, housing instability, domestic violence, and the young age of the parents who were 17 and 18 at the time. Drug use by both parents was also revealed.

6. After a Dependency Hearing on June 27, 2012, on July 3, 2012 the Juvenile Court found the child to be a dependent child, however, the Court permitted the child to remain in the custody of his parents under the supervision of CYS and set forth a Permanency Plan with specific goals.

7. At the Permanency Review Hearing held on December 28, 2012, the Juvenile Court found that K█████ and R█████ had been minimally compliant with the Permanency Plan. The Juvenile Court again permitted the child to remain with the parents under the supervision of CYS. The Court further ordered R█████ to undergo a drug and alcohol assessment and comply with all recommendations, and for both parents to cooperate with Independent Family Services and utilize other



specific services made available to them.

8.  At the Permanency Review Hearing held on March 6, 2013, the Juvenile Court found that each parent had only been minimally compliant with the Permanency Plan, and specifically R█████ had not undergone the drug and alcohol assessment ordered on December 28, 2012.

9.  On May 13, 2013 at a Shelter Care Hearing, the Court ordered that legal and physical custody of the child be transferred to CYS.  Both parents were ordered to attend the Independent Family Services Batterer's Group.

10.  As a result of the Permanency Review Hearing held on October 23, 2013, the Court found that K██████ again was only minimally compliant with the Permanency Review Plan in that although she had maintained visitation with the child and cooperated with service providers, she had not completed the anger management classes nor had a stable residence. R█████ had no compliance with the Permanency Plan as he had not visited the child, attended the Batterer's Group, or completed the drug and alcohol assessment.  The placement goal was then changed to a concurrent placement plan of adoption with return to parent.  Each parent was then given specific orders, including R█████ to comply with the drug and alcohol assessment and that he move from the current residence with K██████.  Both parents were to submit to random drug screens and complete the Batterer's Group, and

K████ was ordered to establish a residence independent of R███.

11. At the Permanency Review Hearing held on March 24, 2014, Mother again was minimally compliant and had made moderate progress toward alleviating the circumstances which resulted in the placement. Father had no compliance and made no progress toward eliminating the circumstances which necessitated the placement. As part of the review, both parents were ordered to receive psychological evaluations to determine the need for services to aid in ensuring the safety of the child.

12. At the Permanency Review Hearing held on June 25, 2014, mother again had been moderately compliant and father again had no compliance with the Permanency Plan. K██████ had undergone a psychological evaluation with Dennis M. Kashurba, a licensed psychologist, and in his report dated April 25, 2014, he made the following findings:

> "All in all, she (referring to K██████) gave the impression of a level of social and emotional functioning that would be more consistent with a 12- or 13-year-old middle school girl than a young adult who is developing the skills to independently parent her son on an ongoing basis.
> ...Her 99th percentile score in a parent/child dysfunctional interaction area is of particular concern, since this subscale focuses on the parent's perception that the child does not meet the parent's expectations and that the interactions with the child are not reinforcing to the parent.
> ...In either case, such an evaluation suggests that the parent/child bond is either

threatened or has never been adequately established. The 90th percentile score in the difficult child area is indicative of a parent who is experiencing difficulty in managing the child's behavior in terms of setting limits and gaining a child's cooperation. Such a degree of elevation suggests that the need for service is beyond the scope of traditional short-term parental consultation or parent education classes. Thus, despite K▓▓▓▓ having received hands-on parent training for more than a year's time, she still perceives herself as having a significant degree of difficulty in managing L▓▓▓'s behavior.

...On the Aggression Questionnaire...Her total score at the 96th percentile for young adult females suggest that she has a well above average propensity for experiencing difficulty with anger management and aggressive Tendencies. She had three areas of significant elevation, with the highest being the 97th percentile score in the hostility area. The hostility subscale of the Aggression Questionnaire is the one most closely associated with pervasive social maladjustment, as well as severe psychopathology and even physical illness. This scale represents attitudes of bitterness, social alienation, and paranoia.

...K▓▓▓▓ is clearly not able to reasonably be expected to assume parental responsibilities for her son, L▓▓▓, in the foreseeable future.

...Her ongoing response to treatment, which is described by the parent trainer as being primarily at the pre-contemplative stage of motivation for change, suggests that she is still largely unaware of the severity of her current situation and circumstances. In such cases, long-term, intensive, multimodal mental health treatment services will be necessary on a years versus months duration."
(Petitioner's Exhibit 9)

13. The Court further ordered that R▓▓▓ was not a

placement option for the child and no further services would be provided to him.

14. At the Permanency Review Hearing held on October 27, 2014, the Court made several important findings:

A. Although K████ had made moderate progress, her mental health issues prevented her ability to parent because she had no insight;

B. K████ continued her relationship with Ricky;

C. R████ had made no progress in that he had not complied with the CYS recommendations;

D. CYS had exhausted all available services;

E. The concurrent goal of return to parent was neither appropriate, nor feasible and the new Permanency Plan Goal was adoption.

15. At the Permanency Review Hearing held on April 13, 2015, the Court noted that the child had now been in placement for 23 months and that the parents were no longer placement options in that neither had complied with the permanency goals, and that K████ had made minimal progress and R████ had made no progress.

16. With regard to K████'s progress with the help provided by Independent Family Services, Inc., the Discharge Summary dated April 30, 2015, (Petitioner's Exhibit 11) states the following:

"...K████ would answer the questions the appropriate way, however, would not follow

through with what she and the IFS staff had discussed. K████ admitted to other providers that R███y assaulted her and she was afraid of him, however, continued to have a relationship with him. K████ also did not follow through with her court ordered mental health counseling. K████ gave excuses as to why she was unable to attend.

... K████ would give more excuses and would not follow through with scheduling the appointments on a consistent basis."

17. The CASA report to the Juvenile Court dated February 11, 2016, is revealing and summarizes R███y's and K████'s response to the efforts made by CYS and the Court to help the family.

"I have been the CASA volunteer for L████ for almost four years (since May of 2012). During that time K████ had an unbelievable amount of support services, including CYS, IFS (both mental health and home management), Women's Help Center, and myself. When I first met K████, I felt that she was young and immature and did not fully grasp the severity of her situation. However, in the second year, she began to make progress. She really focused on the goal of reunification and what she needed to do to make that happen. (This work on her part did coincide with R███y C███ being incarcerated for a good part of this time). Unfortunately, beginning in the fall/winter of 2014, I began to see a decline in K████'s progress. She once again began to make poor decisions and in my opinion did not make Lucas her first priority. I found her regression disheartening because I know that K████ loves L████ and there is a definite bond between mother and son. I was not in agreement with CYS's initial recommendation of a goal change from reunification to adoption. I felt that K████ deserved another chance to step up and continue her progress. However, both R████ and K████ failed to do what was necessary and I changed my opinion and felt that a goal change to adoption was necessary and I still

maintain that opinion."

18. Although K▓▓▓▓▓ gave birth to a second child in January of 2015 and CYS has no plan to remove that child at this time, the agency case supervisor expressed the opinion that K▓▓▓▓ cannot manage two small children and needs the support of the baby's grandmother to care for this new child. Although K▓▓▓▓ does well with one-to-one support, on her own she goes backward.

19. The summary of R▓▓▓'s progress can be summed up as follows:

A. Did not complete Batterer's Group;

B. Did not complete the drug and alcohol assessment;

C. Did not complete psychological evaluation with Mr. Kashurba.

20. The Court does not dispute that K▓▓▓▓ and R▓▓▓▓ love their child, however, their actions, or better stated inactions, to resolve the various issues which caused CYS to remove this child on May 13, 2012, still exist today, 34 months later.

21. The Pennsylvania Supreme Court *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) stated:

"If the grounds for termination under
subsection (a) are met, a court "shall give
primary consideration to the developmental,
physical, and emotional needs and welfare
of the child." 23 Pa.C.S. Section 2511(b).
The emotional needs and welfare of the child

have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." In *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, 620 A.2d 481, 485 (Pa. Super. 1993), this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791."

22. In conducting a bond analysis under 2511(b), this Court is not required to use expert testimony but may rely on the testimony of the social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

23. Relying on the testimony of Kathy Scaife, Sarah Bantly of IFS, and Ellen Shayesteh, the CASA volunteer, Alex Martin, the caseworker, and May Popovich, the caseworker supervisor, as set forth in Plaintiff's Exhibit 8 to the effect that:

"These parents have been unable to not only demonstrate skills required to provide for this child's needs and ensure their safety, but to make proper decisions, avoid domestic violence, and cease contact between each other."

This Court finds that the best interests of L██████ would be served by terminating the parental rights of K██████ and R████.

24. This Court's major concern is the safety of the child. He cannot be subjected to domestic violence. Even

if K████ and R███ do stay apart from each other as they testified to, their empty promises lack credibility. They have failed to complete the necessary programs offered to help them. Any detriment to the child as a consequence of severing the bond between the child and his parents is outweighed by his safety and security needs. A parent's love of his or her child does not preclude a termination.

25. Petitioner, CYS, has established a legal basis for terminating the parental rights of K████ M███ G███ and R███ L███ C███.

26. The following subsections of 23 Pa.C.S. Section 2511(a) establish the basis for terminating the parental rights of these parents:

(1) The parent by conduct continuing for a period of at least 6 months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties;

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his/her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent;

(5) The child has been removed from the care of

the parent by the court or under a voluntary agreement with an agency for a period of at least 6 months, the conditions which led to the removal or placement of the child continues to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of a parent by the court or under a voluntary agreement with an agency, twelve months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would best serve the needs and welfare of the child.

27. In terminating the parental rights of these parents, this Court has found that this will best meet the developmental, physical, and emotional needs and welfare of the child.

28. It is hereby ORDERED, ADJUDGED, and DECREED that the parental rights and duties of K███████ M████ G████ and R████ L███ C████ to the child L████ J████ C████ are forever terminated; said termination to extinguish the power and the

right of K██████ M████ G████ and R████ L███ C███ to object to or receive notice of the adoption proceedings.

29. The adoption of L█████ J█████ C███ may continue without further notice to or consent of K██████ M█████ G████ and R████ L████ C███.

30. The custody of L█████ J█████ C███ is hereby confirmed in Cambria County Children and Youth Services pending the final adoption proceedings.

**Notice to the Respondents, K██████ M█████ G████ and R████ L████ C███**

You are hereby notified that you have the right pursuant to 23 Pa.C.S. Sections 2923 and 2934(b) to file at any time and update medical and/or social history information with the following:

1. The Court that terminated your parental rights;

2. The Court that finalized the adoption;

3. The agency that coordinated the adoption;

4. The information registry established at the Pennsylvania Department of Human Services pursuant to 23 Pa.C.S. Section 2921,

for the purpose of making that information available to the person to be adopted and to the adoptive parents under the conditions provided by law.

BY THE COURT:

_____
Patrick T. Kiniry, Judge