J-S66044-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| IN RE: ADOPTION OF V.W., A/K/A V.W. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: V.W., NATURAL FATHER | No. 960 WDA 2017 |

Appeal from the Decree June 28, 2017
in the Court of Common Pleas of Fayette County
Orphans' Court at No.: 11 Adopt 2017

BEFORE: BENDER, P.J.E., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    FILED NOVEMBER 27, 2017

V.W. (Father) appeals the decree of the Court of Common Pleas of Fayette County (trial court) that terminated his parental rights to his son, V.W., a/k/a V.W.[1] (Child) (born 8/15). We affirm.[2]

Fayette County Children and Youth Services (CYS) became involved with this family when it learned that Child had been born in a hotel room, transported to Children's Hospital in Pittsburgh, and placed in the neonatal intensive care unit after testing positive for opiates and methamphetamines. Neither parent visited Child in the hospital.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The "a/k/a" refers to an occasional misspelling of Child's name.

[2] The trial court also terminated the parental rights of Child's mother, A.K. (Mother). Mother did not appeal that termination.

The trial court adjudicated Child dependent at a hearing on September 18, 2015, and placed him in the physical and legal custody of CYS. Mother and Father agreed to a family service plan (FSP) on November 23, 2015, that listed these goals: maintain sobriety; maintain mental health; maintain contact with Child; parent Child appropriately; and cooperate with CYS.

CYS filed its petition to terminate Mother and Father's parental rights on January 27, 2017. The trial court held a hearing on that petition on June 13, 2017. Testifying at that hearing, in addition to Father, were CYS caseworkers, Darrell Jackson and Shawn Taylor, and, on behalf of Father, visitation aide, Christine Yeardie.

Mr. Jackson testified that both parents failed to maintain their sobriety. (See N.T. Hearing, 6/13/17, at 12). Mr. Jackson stated that Father was asked to provide urine samples on nine occasions, but produced only four samples, all of which were negative. (See id. at 26). According to Mr. Taylor, the trial court ordered Father to undergo a drug test at CYS on December 27, 2016, but Father failed to appear at the Agency. (See id. at 19). In its opinion, the trial court noted, "[Mr. Jackson] testified credibly as to numerous examples of Father's blatant lack of cooperation with regard to drug tests." (Trial Court Opinion, 8/02/17, at 7) (record citation omitted).

Mr. Jackson claimed that both parents failed to address their mental health. (See N.T. Hearing, at 12-13). Father only began mental health treatment on May 9, 2017, a month before the termination hearing. (See id.

at 13). According to Mr. Jackson, both parents failed to maintain contact with Child and both have been inconsistent with their visits. (See id. at 13-14).

Mr. Jackson testified that Mother and Father are not able to parent Child appropriately. (See id. at 15-17). Mr. Jackson stated that Father only started parenting classes the day before the hearing, and that his home was not ready for Child to reside there. (See id. at 16, 20-21).

Mr. Jackson also stated that both parents failed to maintain regular contact with CYS. (See id. at 17-20, 29). According to Mr. Jackson, Father had contacted CYS about "once a month." (Id. at 30).

Shawn Taylor was the family's CYS caseworker from June 13, 2016, to March 3, 2017. Mr. Taylor testified that he had difficulty drug testing Father, and he believed that Father had twice attempted to cheat on a drug test. (See id. at 42, 44, 49). Mr. Taylor described Father as being "somewhat inconsistent" in visiting Child. (Id. at 47). He also testified that he arranged free parenting classes for Father, but Father never contacted the agency that offered those classes. (See id. at 45-46).

Christine Yeardie testified on behalf of Father. Ms. Yeardie works at the Visitation House in Uniontown supervising visits between parents and their children. She testified that Father had been inconsistent visiting with Child in the past, but had been more consistent in recent months. (See id. at 65). She stated that when Father attends a visit, he acts appropriately with Child, and that Child interacts with Father and seems to recognize him. (See id. at 65-66).

Father testified that he was unable to visit Child at the hospital because he did not have transportation, but he claimed that he called the hospital every day to check on Child. (See id. at 116-17).

Father testified that he had a drug and alcohol assessment, and there was no recommendation for treatment. (See id. at 81). Father testified that he was often unable to provide urine samples because he felt uncomfortable around his caseworker, Mr. Taylor. (See id. at 81-82). Father testified that he started mental health treatment the month before the hearing and receives treatment once a week. (See id. at 91). Father admitted that he missed visits with Child due to transportation issues and his work schedule, but said he attended more visits than he missed. (See id. at 88, 97).

Father testified that he attempted to participate in parenting classes before CYS filed its petition for involuntary termination, but that he did not qualify for one class and that CYS refused to accept the class he did attend. (See id. at 93). Father claimed that he was in the process of buying a house. (See id. at 87-88). Father admitted that he did not maintain regular contact with CYS because of a personality conflict with the caseworker, Mr. Taylor. (See id. at 89-90). Father also maintained that CYS interfered with his ability to complete his goal plan by assigning three different caseworkers at various times throughout the case. (See id. at 97).

The trial court entered its decree terminating Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(8) and (b) on June 28, 2017. Father filed his notice of appeal and concise statement of errors complained of on

- 4 -

appeal on June 29, 2017. The trial court entered its opinion on August 2, 2017. See Pa.R.A.P. 1925.

Father raises the following question on appeal:

1. Did the [trial] court abuse its discretion in terminating the parental rights of [Father], as [CYS] failed to present sufficient evidence to sustain its burden of proof?

(Father's Brief, at 3) (unnecessary capitalization omitted).

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). See *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc), appeal denied, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

§ 2511. Grounds for involuntary termination

(a) General rule.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*   \*   \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\*   \*   \*

(b) Other considerations.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(8), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." In re T.F., 847 A.2d 738, 742 (Pa. Super. 2004) (citation and internal quotation marks omitted). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

In the Interest of K.Z.S., 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The trial court concluded that termination was appropriate under Section 2511(a)(8).

> With regard to Section 2511(a)(8), in order to terminate parental rights, an agency must prove by clear and convincing evidence that (1) that the child has been removed from the care of the parent for at least twelve (12) months; (2) that the conditions which had led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child.

In re Adoption of C.L.G., 956 A.2d 999, 1005 (Pa. Super. 2008) (citations and internal quotation marks omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child, but our case law requires the evaluation of any such bond. See In re E.M., 620 A.2d 481, 484-85 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. See In re K.K.R.-S., 958 A.2d 529, 533 (Pa. Super. 2008).

Here, Father claims that CYS did not present sufficient evidence to permit the trial court to terminate his parental rights. We disagree.

Father claims to have achieved his goal regarding drug and alcohol treatment by providing negative drug screens and undergoing an assessment that resulted in a recommendation that he did not need drug and alcohol treatment. An initial evaluation did not find the need for treatment but Father's sporadic and suspicious testing over the course of this case did not satisfy his family service plan goal. Mr. Taylor explained that a recommendation of no treatment, "doesn't mean that we're going to stop drug testing[.]" (N.T. Hearing, at 51). Mr. Taylor testified that Father was aware of that fact. (See id.).

Father claims he received a mental health evaluation and is attending treatment. However, Father was discharged from mental health treatment for

non-compliance. (See id. at 13). At the time of the hearing, he had started treatment again only the month before the hearing.

Another of Father's goals was to visit consistently with Child to establish a bond. Father claims to have "maintained regular contact with" Child. (Father's Brief, at 13). Testimony from both caseworkers contradicts Father's claim of regular contact. (See N.T. Hearing, at 14-15, 46-48). When Father claimed that transportation problems kept him from visitation, CYS made a referral to an outside agency to transport Father to visits beginning in September of 2016. Despite this referral, Mr. Taylor still described Father's visits as "inconsistent." (Id. at 47). In fact, Father's own witness, Ms. Yeardie, testified that she did not know how many visits Father had missed, but stated, "frequently that does happen." (Id. at 65).

Father claims that CYS itself prevented him from completing his goals because there have been three different caseworkers on his case. (See id. at 96-97). He admits, however that CYS had to assign male caseworkers to his case after he got too friendly with his first caseworker, who was female. (See id. at 103). Father admitted that he contacted CYS, "as little as possible, as little as I can get away with" and that he "avoided [Mr. Jackson] like the plague." (Id. at 90).

Father only began parenting classes in June of 2017, shortly before the termination hearing, in spite of the fact that parenting classes were a goal from the very first FSP.

Father concedes that he has not completed the goals that CYS established to permit him to reunite with Child. He testified, "I get what you're saying, it's taken a long time I get it. I should have got this done a long time ago." (Id. at 105).

We quote the trial court's findings regarding Child's best interests and welfare under Section 2511(b), with approval:

> In making its decision in this case, [the trial c]ourt also considered the developmental, physical and emotional needs and welfare of [Child], as required by Section 2511(b). The trial court must consider "intangibles such as love, comfort, security, and stability[.]" In re C.P., 901 A.2d 516, 520 (Pa. Super. 2006). The trial court "must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." [] C.L.G., [supra at] 1009 [(citation omitted)]. [Here, the trial c]ourt agree[d] with the attorney representing the interests of [Child]; that is, [Child] needs something he can count on. He needs permanency in his life. He has been with his foster family since his birth, and this is the family that he has come to know as his own. [The trial court found] that termination is in the best interest of [Child], and the continuation of his placement and future adoption by his foster parents will provide him the love, comfort, security, and stability that he deserves.

(Trial Ct. Op., at 8-9).

Accordingly, for the reasons stated, we conclude that the trial court's decision to terminate Father's parental rights pursuant to Sections 2511(a)(8) and (b) is supported by clear and convincing evidence in the record, and that there was no abuse of the trial court's discretion.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/27/2017