J-S22034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF V.I.M.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.B., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4041 EDA 2017 |

Appeal from the Decree Entered November 13, 2017
in the Court of Common Pleas of Montgomery County
Orphans' Court at No.: 2017-A0055

| | | |
|---|---|---|
| IN RE: ADOPTION OF N.H.M.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.B. JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4049 EDA 2017 |

Appeal from the Decree Entered November 13, 2017
in the Court of Common Pleas of Montgomery County
Orphans' Court at No.: No. 2017-A0056

| | | |
|---|---|---|
| IN RE: ADOPTION OF J.T.C.B. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: N.B., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4050 EDA 2017 |

J-S22034-18

Appeal from the Decree Entered November 13, 2017
in the Court of Common Pleas of Montgomery County
Orphans' Court at No.:  No. 2016-A0057

BEFORE:   BENDER, P.J.E., STABILE, J., and PLATT[*], J.

MEMORANDUM BY PLATT, J.:                    **FILED SEPTEMBER 21, 2018**

In these consolidated cases[1], N.B., Jr. (Father) appeals the decrees of the Court of Common Pleas of Montgomery County (trial court) that terminated his parental rights to his daughter, V.I.M.B. (2/08), his son, J.T.C.B. (11/09), and his son, N.H.M.B. (10/13) (Children).  We affirm.[2]

The Montgomery County Office of Children and Youth (OCY) filed its petition to terminate Father's parental rights on May 11, 2017.  In an order entered on June 27, 2017, the trial court appointed counsel to represent the legal interests of the Children.  A guardian *ad litem* also represented the Children throughout the proceedings.

The hearing regarding these matters took place over the course of four days.  Counsel for the Children was present and actively participated in the examination of each of the witnesses.  OCY presented evidence Mother and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1]  This Court consolidated these appeals, *sua sponte*, on January 10, 2018, as they involve related parties and issues.

[2]  The trial court also terminated the parental rights of the Children's mother, H.J.M. (Mother).  Mother has filed separate appeals of that termination at 4031, 4032, and 4033 EDA 2017, which we address in a separate Memorandum.

Father had significant issues with housing, domestic violence, untreated mental health problems, inappropriate discipline of the Children, failure to follow professional recommendations, resistance to individuals and agencies involved in the case, unmanaged anger, refusal to participate in family therapy, and inconsistency in supervised visits with the Children. Despite OCY's efforts to reunify the Children with their parents, the Children remained in foster care from November 12, 2015 to the time of the hearings, a period in excess of 24 months.

All three children have demonstrated emotional and behavioral issues and academic delays. N.T. 11/03/2017, at 167, 170. V.I.M.B. has a diagnosis of post-traumatic stress disorder with a rule-out diagnosis of bipolar disorder. Her behavioral problems include lengthy tantrums, defiance, a lack of social skills, and a heightened fear of change. J.T.C.B. suffers from physical disabilities related to cerebral palsy. He also has mental health diagnoses, including ADHD, post-traumatic stress disorder, oppositional defiant disorder, and a rule-out diagnosis of bipolar disorder. J.T.C.B. has been hospitalized on at least one occasion for suicidal ideations and, in March of 2017, he alleged his older half-brother abused him sexually in the home of his birth parents. His behavioral problems include tantrums and defiance. N.H.M.B. has developmental delays and has required instructional support in eating, communication, and physical therapy. Therapeutic intervention, including

treatment combined with a consistent structured environment, is necessary to prevent further deterioration. N.T. 11/03/2017, at 167, 176-177.

OCY has had an extensive history of involvement with this family. OCY caseworker, Kathleen Spano, worked with the family from June 24, 2011 until December 5, 2011. N.T. 10/31/2017, at 12. She testified that the conditions of the home were, "deplorable" and that there was a "lack of mental health service follow-through" with regard to two children not subjects of the current action. N.T. 10/31/2017, at 12. She testified that on September 7, 2011, J.T.C.B. was wandering around with just a diaper on in the pouring rain. N.T. 10/31/2017, at 15. As a result, OCY removed V.I.M.B. and J.T.C.B. from their parents' home on September 19, 2011. N.T. 10/31/2017, at 13-14.

Ms. Spano also testified that the house was unsafe and that conditions in the home never improved. N.T. 10/31/2017, at 16-17. She testified that Family Services eventually had to terminate Time Limited Family Reunification Services because Mother and Father refused to cooperate. N.T. 10/31/2017, at 27. Ms. Spano testified that not only did Mother and Father fail to meet the goals set by OCY, they actually made the situation worse. N.T. 10/31/2017, at 31. Ms. Spano testified that Mother and Father consistently failed to demonstrate a capacity to handle the Children and their behaviors. N.T. 10/31/2017, at 68.

N.H.B. was born while the other two children were in foster care. N.T. 10/31/2017, at 59. V.I.M.B. and J.T.C.B. returned to their parents' custody

on November 26, 2013, but a number of issues arose immediately. Caseworker Chauntey Johnson, assigned to the family from February of 2013 to July of 2014, testified that, upon the Children's return, Mother and Father had significant problems caring for the Children on a daily basis, which was exacerbated by the Children's special needs and emotional disabilities. N.T. 10/31/2017, at 60-61. Ms. Johnson observed frequent verbal altercations between Mother and Father, including yelling and screaming, slamming doors, and cursing. N.T. 10/31/2017, at 61-62. These altercations often played out in the presence of the Children and had an observable negative impact on them. N.T. 10/31/2017, at 63.

The family lost their housing after V.I.M.B. and J.T.C.B. were returned to their parents' custody and the family ended up in a shelter. They were asked to leave the shelter when Mother failed to follow shelter rules. N.T. 10/31/2017, at 68. The Children returned to the custody of OCY on July 1, 2014. N.T. 10/31/2017, at 68.

In November of 2014, Mother and Father moved to Delaware, while the Children remained in the care of OCY. N.T. 11/06/2017, at 341. They were returned to the physical custody of Mother and Father in Delaware on October 27, 2015. N.T. 11/06/2017, at 349-350. Mother and Father, however, refused to cooperate with Delaware Children and Youth officials, who then terminated the agreement that permitted the Children to reside in Delaware.

N.T. 11/06/2017, at 358-359. The Children returned to the custody of OCY on November 12, 2015. N.T. 11/06/2017, at 358-359.

The trial court appointed psychologist William Russell, Ph.D., an expert in parenting capacity and parental bonding, to evaluate Mother and Father's capacity to parent. N.T. 11/03/2017, at 128. Dr. Russell recommended weekly therapy for Mother, as well as couples counseling. N.T. 11/03/2017, at 138-144. Despite his recommendations, Mother failed to engage consistently in weekly therapy, and Mother and Father failed to begin couples counseling. N.T. 11/03/2017, at 157, 163. Dr. Russell testified that volatility remained in their relationship and Mother had not improved her pattern of unstable behavior. N.T. 11/03/2017, at 150. Importantly, Dr. Russell testified that he did not observe any evidence that the Children suffered any anxiety, loss, sadness, or disruption at or after the separation from their parents. N.T. 11/03/2017, at 173-174. He further testified that neither parent could provide safety for the Children, and, because of the continued volatility, he did not believe they could provide permanency. N.T. 11/03/2017, at 175, 211. Dr. Russell opined that the Children need to be placed in an environment that provides them with consistency and structure. N.T. 11/03/2017, at 177, 180. In conclusion, he testified, "Moving your child doesn't mean you can protect them." N.T. 11/03/2017, p. 234.

OCY placed the Children at Christ Home for Children in Warminster, Pennsylvania in July of 2014, where they remained at the time of the trial.

N.T. 11/03/2017, at 242. Glenn Serino, the house parent for the Children, testified, "from the beginning, there were areas of concern" regarding Mother and Father. N.T. 11/03/2017, at 254. He testified that Father would often arrive late to visits with the Children and was disconnected throughout the entire visit. N.T. 11/03/2017, at 254-255. Mother and Father would not consistently call the Children, which would upset them. N.T. 11/03/2017, at 273. On several occasions, Father mocked J.T.C.B.'s disability, referring to him as a "peg-leg," which made J.T.C.B. visibly upset. N.T. 11/03/2017, at 257. According to Mr. Serino, during visits with their parents, the Children behaved differently, whining, withdrawing, and becoming increasingly defiant. N.T. 11/03/2017, p. 259-261. Mr. Serino testified that, as time went on, the Children became less excited about their parents' visits, especially when the parents had missed the visit before. N.T. 11/03/2017, at 260.

Visits began at Mother and Father's home near the end of 2016. N.T. 11/03/2017, at 262. Before these visits, V.I.M.B. stated numerous times that she was afraid to go to her parents' house. N.T. 11/03/2017, at 262. Strikingly, Mr. Serino testified that Mother and Father were, "the worst parents" that he had ever worked with, further characterizing them as "uncooperative," "mean-spirited," "threatening," and "menacing." N.T. 11/03/2017, at 275-276.

OCY caseworker, Rachel Wise, assigned to this case from October 31, 2016 through the time of the termination hearing, testified that she initially

tried to assist Mother and Father in pursuing the reunification plan outlined by Dr. Russell. N.T. 11/06/2017, at 445-446. Mother and Father, however, were not in agreement with the recommendations and, by Ms. Wise's observation, had no intention of complying with the plan. N.T. 11/06/2017, at 447-448. She testified to numerous failures on the part of Mother and Father to comply with the goals set forth to reunify them with their Children. Despite a plan for weekly therapy, Father only attended four sessions between September and April. N.T., 11/06/2017, at 451. Mother and Father also failed to attend couples therapy. N.T. 11/06/2017, at 452-453. In addition, Mother and Father did not make the home renovations necessary to accommodate the Children if they were to move back to their home. N.T. 11/06/2017, at 449-450. Ms. Wise also testified that Mother and Father have failed to engage appropriately with treatment providers for the Children, such as family-based therapy and school. N.T. 11/06/2017, at 449-450.

The Children reported that both Mother and Father threatened to put them in the basement if they were misbehaving. N.T. 11/06/2017, at 462. They also reported that Mother threatened to feed them to the dog. N.T. 11/06/2017, at 462. Ms. Wise also testified that, in March 2017, visits were suspended temporarily after a children's telephone hotline received a report about alleged sexual abuse of J.T.C.B., by a sibling not a party to this case, which allegedly took place during a visit to the parents' home. N.T. 11/06/2017, at 461. OCY eventually offered one-hour weekly, supervised

visits with the Children to Mother and Father. N.T. 11/06/2017, at 464. Out of the twenty-four visits offered between May of 2017 and October of 2017, Mother and Father only attended nine. N.T. 11/06/2017, at 464.

The trial court entered its decrees terminating Father's parental rights to the Children on November 13, 2017. Father filed his notices of appeal and concise statements of errors complained of on appeal on December 7, 2017.

Father raises the following questions for our consideration:

1. The [trial court] committed an error of law and/or abuse of discretion when it held that [OCY] had proven by "clear and convincing evidence" that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(2) in that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the [Children] to be without essential parental care, control or subsistence necessary for their physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. The Court did not take into consideration prior to termination [Father's] compliance with the family service plans and attempts to rectify the situations that led to placement over the years prior to filing and Father did not have a voluntary settled purpose of relinquishing parental claim to a child nor had he refused or failed to perform parental duties.

2. The [trial court] committed an error of law and/or abuse of discretion when it held that [OCY] had proven by "clear and convincing evidence" that [Father's] parental rights should be terminated pursuant to 23 Pa.C.S. § 2511(a)(8) in that the children have been removed from the care of the parent by the court or under voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions while (sic) led to removal or placement of the children continue to exist and termination of parental rights would best serve the needs and welfare of the child. Father on multiple occasions was in compliance with family service plans and rectified the conditions that led to removal and placement of the [C]hildren.

3. Did the [trial court] commit error by involuntarily terminating Father's parental rights to the [C]hildren where the evidence confirmed that a strong and loving bond existed between Father and the [C]hildren and the [OCY] was unable to establish by clear and convincing evidence that termination was in the best interests of the [C]hild[ren] as contemplated by 23 Pa.C.S.A. [§] 2511(b).

Father's Brief at 4-5.

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citations omitted).

- 10 -

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), (8), and (b).  In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a).  *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).  Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

> **(a) General rule.**−The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004). Further,

> A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (internal citations omitted).

The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975). There the Pennsylvania Supreme Court announced under what is now Section 2511(a)(2), that the petitioner for involuntary termination must prove "[t]he repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent." *Id.* at 173.

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re T.S.M.*, 71 A.3d 251 (Pa. 2013). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008).

Father claims the trial court erred when it terminated his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2). We disagree.

The Children have been in placement in excess of twelve months. OCY placed the Children in foster care in July of 2014 after, as we detail above, Mother and Father demonstrated repeatedly that they were unable to care for them properly. They remained in foster care at the time of the hearing. Dr. Russell testified to the volatility in Mother's relationship with Father and their continuing pattern of unstable behavior. N.T. 11/03/2017, at 150. Dr. Russell opined that neither parent could provide safety or permanency for the Children. N.T., 11/03/2017, at 175, 211.

Ms. Wise testified that, despite her efforts, Mother and Father refused to cooperate when she attempted to implement Dr. Russell's reunification plan. N.T. 11/06/2017, at 445-446. According to Ms. Wise, Mother and Father did not agree with the plan and had no intention of complying with it. N.T. 11/06/2017, at 447-448. She went on to testify to numerous failures on the part of Mother and Father to comply with the goals set forth to reunify them with their Children, such as their failure to attend therapy sessions, their failure to renovate their home, and their failure to engage with the Children's medical and mental health providers. N.T., 11/06/2017, at 449-450, 451, 452-453.

Ms. Johnson observed that Mother and Father had significant problems caring for the Children on a daily basis, problems that were magnified by the Children's special needs and emotional disabilities. N.T. 10/31/2017, at 60-61. Ms. Johnson observed frequent verbal altercations between Mother and Father, including yelling and screaming, slamming doors, and cursing that often played out in the presence of the Children and had an observable negative impact on them. N.T. 10/31/2017, at 61-62, 63.

Despite OCY's efforts, the conditions that led to the Children's placement continue to exist more than twelve months after they entered placement. The trial court did not abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2).

Father also claims that the trial court erred when it terminated his parental rights pursuant to 23 Pa.C.S.A. § 2511(b). We again disagree.

Mr. Serino testified, "from the beginning, there were areas of concern" regarding Mother and Father. N.T. 11/03/2017, at 254. Mother and Father would not consistently call the Children, which would upset them. N.T. 11/03/2017, at 273. During visits with their parents, Mr. Serino noted the Children behaved differently, whining, withdrawing, and becoming increasingly defiant. N.T., 11/03/2017, at 259-261. As time went on, the Children became less excited about their parents' visits, especially when the parents had missed the prior visit. N.T. 11/03/2017, at 260. Before visits at Mother and Father's home, V.I.M.B. stated numerous times that she was afraid to go to her parents' house. N.T., 11/03/2017, at 262. Mr. Serino testified that Mother and Father were "the worst parents" that he had ever worked with, calling them, "uncooperative," "mean-spirited," "threatening," and "menacing." N.T. 11/03/2017, at 275-276.

Dr. Russell testified that he did not observe any evidence that the Children suffered any anxiety, loss, sadness, or disruption at or after the separation from their parents and that they need to be placed in an environment that provides them with consistency and structure. N.T. 11/03/2017, at 173-174, 177, 180.

Our review of the record reveals that the trial court did not abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(b).

Accordingly, for the reasons stated, we affirm the decrees of the Court of Common Pleas of Montgomery County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/18